UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSUE MAURICIO SURISDAI
CASIMIRO FELIPE,

                 Petitioner,

    v.

MARKWAYNE MULLIN ET AL.,

                 Respondents.

Case No. C26-1986-SKV

ORDER GRANTING HABEAS
PETITION

## I.      INTRODUCTION

Petitioner Josue Mauricio Surisdai Casimiro Felipe, who is currently detained by U.S. Immigration and Customs Enforcement (ICE) at the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington, brings this 28 U.S.C. § 2241 habeas action through counsel seeking release from detention.  Dkt. 1.  Respondents filed a return to the petition, Dkt. 5, together with a supporting declaration, Dkt. 6, and Petitioner filed a reply, Dkt. 7.  Now, having considered the parties' submissions and the governing law, the Court GRANTS the petition, ORDERS that Petitioner be released from detention within twenty-four (24) hours, and addresses additional requests for relief below.

/ / /

ORDER GRANTING HABEAS PETITION - 1

## II.    BACKGROUND

Petitioner is a native and citizen of Guatemala.  Dkt. 6, ¶3.  He entered the United States on May 9, 2024, and encountered United States Border Patrol (USBP).  *Id*., ¶4.  On the following day, USBP served Petitioner with a Notice to Appear (NTA), charging him as removable under Immigration and Nationality Act (INA) § 212(a)(6)(A)(i), and released him on an Order of Recognizance (OREC).  *Id*., ¶5.[1]  The Government filed the NTA with the Immigration Court on May 14, 2024.  *Id*., ¶5.

Petitioner thereafter actively participated in the removal proceedings initiated by the Government, including retaining counsel, appearing for hearings, and filing an Application for Asylum, Withholding of Removal, and Protection under the Convention Against Torture (CAT).  Dkt. 1, ¶¶31-32.  He also consistently complied with all immigration-related obligations and, following his release from federal custody, remained in, worked, and established significant ties to the community.  *Id*., ¶37.  He has no criminal history.  *Id*., ¶¶34, 38.

On May 18, 2026, ICE officers encountered Petitioner at his known residence in Hurricane, Utah, while operating a vehicle registered in his own name.  *Id*., ¶39.  During that encounter, ICE officers took Petitioner into custody based on a determination that he had been given a court date in April 2025.  Dkt. 6, ¶6.  That court date had been canceled and a new court date had not been issued.  *Id*.  ICE booked Petitioner into NWIPC on May 19, 2026.  *Id*.

On June 8, 2026, Petitioner appeared before an Immigration Judge (IJ) at a master calendar hearing.  *Id*., ¶6.  The IJ designated Guatemala as Petitioner's country of removal and scheduled an individual calendar hearing for July 8, 2026.  *Id*., ¶7.

---

[1] Respondents did not provide the NTA, OREC, or any other documents from Petitioner's immigration file.

ORDER GRANTING HABEAS PETITION - 2

Petitioner filed his habeas petition in this Court on June 8, 2026.  Dkt. 1.  His asylum application remains pending.  *Id.*, ¶33.  He has not yet filed a bond redetermination request with the Immigration Court.  Dkt. 6, ¶8.

### III.    LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026).  "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," and may dispose of habeas matters "as law and justice require."  *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013); 28 U.S.C. § 2243.

### IV.    DISCUSSION

Petitioner asserts that, under *Mathews v. Eldridge*, 424 U.S. 319 (1976), Respondents violated his Fifth Amendment right to due process by re-detaining him without any constitutionally adequate process.  *See* Dkt. 1.  Respondents do not deny that Petitioner did not receive any process prior to his re-detention and do not address *Mathews*.  *See* Dkt. 5.  Respondents instead assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), and, while acknowledging that courts in this District have found that due process requires a pre-deprivation hearing prior to the revocation of an OREC, argue that the "specific circumstances of Petitioner's re-detention, at most, call for a post-detention bond hearing to mitigate the risk of erroneous deprivation."  *Id*. at 3-6; Dkt. 6, ¶¶6-7.  The Court, as discussed below, rejects Respondents' contention regarding their detention authority, and finds that *Mathews* compels Petitioner's release from detention.

/ / /

ORDER GRANTING HABEAS PETITION - 3

A.    Detention Authority

Respondents argue that 8 U.S.C. § 1225(b) operates to mandate Petitioner's detention. *See* Dkt. 3-6. However, this Court, along with others in the District, routinely rejects Respondents' argument that noncitizens under circumstances similar to Petitioner here are "applicants for admission" who are "seeking admission" and therefore subject to detention under § 1225(b). *See, e.g., Ibrahim v. Mullin*, No. C26-1467-SKV, 2026 WL 1487736, at *5 (W.D. Wash. May 28, 2026); *Caiza Aucatoma v. Hernandez*, No. C26-1253-SKV, 2026 WL 1265541, at *5-6 (W.D. Wash. May 8, 2026); *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1304 n.3 (W.D. Wash. 2025) (collecting cases). Moreover, Petitioner here argues that the Fifth Amendment entitled him to some amount of process before ICE arrested and re-detained him. Dkt. 1 at 7-13. His claim is constitutional, not statutory. Thus, Respondents' argument that § 1225(b) justifies Petitioner's arrest and continued detention, or otherwise comports with due process, is unavailing. *See P.T. v. Hermosillo*, No. C25-2249-KKE, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that [§] 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected."); *Francois v. Wamsley*, No. C25-2122-RSM-GJL, 2025 WL 3063251, at *3 (W.D. Wash. Nov. 3, 2025) ("Any argument that ICE acted within its authority has no [effect] on a claim contending that detention violates Constitutional Due Process."). The Court therefore rejects Respondents' contention regarding their detention authority.

B.    Due Process

The Fifth Amendment forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful

ORDER GRANTING HABEAS PETITION - 4

manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)).  Due process is "flexible and calls for such procedural protections as the particular situation demands."  *Id*. at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted).

The Supreme Court, in *Mathews*, established a three-part test for determining whether a particular government action comports with due process.  The *Mathews* test balances the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

In *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1211 (9th Cir. 2022), the Ninth Circuit assumed without deciding that the *Mathews* test applies in the immigration detention context, and courts in this District employ the framework in cases challenging re-detention under circumstances like those in this case.  *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases employing the *Mathews* factors in similar immigration contexts).  Here, Petitioner applies the *Mathews* framework in arguing in favor of his release, while Respondents argue that Petitioner's particular circumstances warrant a post-detention bond hearing at most.  Respondents do not identify any basis for this Court to depart from its well-

established practice of employing the *Mathews* framework to cases of this nature.  The Court therefore proceeds with its analysis under *Mathews*.

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]"  *Mathews*, 424 U.S. at 335.  The Supreme Court has recognized that "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."  *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (the interest in not being detained "is the most elemental of liberty interests").  The Supreme Court has also repeatedly recognized that "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."  *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025).

Here, when Petitioner was released on an OREC, he acquired a liberty interest protected by the Due Process Clause.  In the two years following his release, he complied with his immigration-related proceedings, applied for asylum, withholding of removal, and protection under CAT, and he remained in, worked, and established significant ties to his community.  *See* Dkt. 1, ¶¶32, 36-37.  Noncitizens "who have established connections in this country have due process rights in deportation proceedings[.]"  *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020).  Respondents do not suggest otherwise.  Accordingly, the first *Mathews* factor weighs in Petitioners' favor.

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the Petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]"  *Mathews*, 424 U.S. at 335.  Respondents do not deny that Petitioner did not receive any process prior to his re-detention.  *See* Dkt. 5.  Also,

ORDER GRANTING HABEAS PETITION - 6

while not conceding that a pre-deprivation hearing was required, Respondents acknowledge that courts in this District have found that due process requires a pre-deprivation hearing prior to the revocation of an OREC. *See id.* at 5-6.

Respondents argue that Petitioner's specific circumstances – including the fact that his re-detention was the result of his having no legal status in the United States and no future scheduled court proceedings, his calendar hearing on June 8, 2026, and the upcoming hearing on July 8, 2026, and the fact that he has not filed a bond redetermination request – call for, at most, a post-detention bond hearing. *See id.* (citing Dkt. 6, ¶¶6-8). They cite to a ruling from a court in this District as providing that the "specific circumstances of Petitioner's redetention drive what process is due." *Lucena-Ojeda v. Noem*, No. C26-0085-BAT, 2026 WL 279353, at *3 (W.D. Wash. Feb. 3, 2026).

Respondents' argument is not persuasive. In *Lucena-Ojeda*, the court found that all of the *Mathews* factors weighed in the petitioner's favor. *Id*. at 2. The court further found that, while the petitioner "may request a bond hearing, a post-deprivation bond hearing is an inadequate procedural safeguard because it would occur only after detention and thus fails to address an erroneous deprivation of liberty." *Id*. The court therefore found the petitioner entitled to immediate release. *Id*. In thereafter noting that the "specific circumstances" of the petitioner's re-detention "drive what process is due[,]" the court found that, if the petitioner was *again* re-detained following his release by order of the court, the respondents "shall provide [the petitioner a pre-detention] notice and a hearing **unless** detention is statutorily mandatory (which it is not currently)." *Id*. at 3 (emphasis in original; citation omitted).

Here, Petitioner's immigration status was known at the time of his release on an OREC, and the absence of a scheduled court proceeding resulted from the Government's cancellation of

ORDER GRANTING HABEAS PETITION - 7

that hearing, not any action or inaction on the part of Petitioner. *See* Dkt. 6, ¶6 (observing that an April 2025 court date given by the Executive Office of Immigration Review (EOIR) "was subsequently cancelled but EOIR never issued Petitioner a new court date."). Nor do Respondents establish the materiality of calendar hearings occurring after Petitioner's re-detention or the fact that, since his re-detention, he has yet to file a bond redetermination request. As argued by Petitioner, and consistent with the finding in *Lucena-Ojeda*, the availability or alleged availability of administrative procedures after Petitioner's re-detention "cannot retroactively cure an unconstitutional deprivation." Dkt. 7 at 4.

When ICE released Petitioner after his initial detention, it did so after determining—as required by regulation—that "such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. §§ 212.5(b), 236.1(c)(8). Courts in this District have found that arresting and detaining noncitizens who were initially detained and released without first reconsidering those factors poses a significant risk of erroneous deprivation. *See, e.g., Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1202-03 (W.D. Wash. 2025); *E.A. T.-B.*, 795. F. Supp. 3d at 1323. Here, Petitioner was conditionally released and complied with the conditions of his release, but was taken into custody and detained without any notice or opportunity to be heard. Respondents present no evidence of any material changes to the facts or circumstances that would indicate a change to the evaluation of Petitioner's flight risk or dangerousness since the issuance of the OREC. The second *Mathews* factor thus weighs in Petitioner's favor.

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. The Government has an

ORDER GRANTING HABEAS PETITION - 8

interest in enforcing immigration laws and securing removal of noncitizens.  *See Rodriguez Diaz*, 53 F.4th at 1208.  It also has an interest in ensuring a noncitizen appears at future immigration proceedings and does not pose a danger to the community.  *See Zadvydas,* 533 U.S. at 690.  Respondents do not assert any of those interests here.  Regardless, the Government's interests would not have been hindered by providing Petitioner with individualized pre-deprivation process.  Custody and bond hearings already occur regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden of such hearings modest relative to the risk and consequences of erroneous detention.  *See, e.g., E.A. T. B*., 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").  The third *Mathews* factor therefore favors Petitioner as well.

In sum, all three *Mathews* factors weigh in Petitioner's favor.  Respondents' re-detention of Petitioner without providing him "an opportunity to be heard at a meaningful time and in a meaningful manner[,]" *Mathews*, 424 U.S. at 333, violates the due process protections afforded him by the Constitution.  As Petitioner has established that he is in custody in violation of the Constitution, he is entitled to habeas relief under § 2241.  Petitioner must therefore be released from custody.

C.      Requests for Relief

In addition to his release, Petitioner asks that the Court declare that his re-detention without due process violated his constitutional rights, enjoin Respondents from continuing to detain him absent constitutionally adequate procedures, and order that any conditions of release be narrowly tailored, no more restrictive than necessary, and reasonably related to ensuring his

ORDER GRANTING HABEAS PETITION - 9

appearance at future proceedings and protecting the community. *See* Dkt. 1 at 13-14; Dkt. 7 at 10. The Court has already found that Petitioner's re-detention violated his due process rights under the Fifth Amendment and ordered his release from detention. To the extent he seeks relief beyond that finding, such as declaratory relief or forward-looking injunctive relief regarding future re-detention, he does not engage with the elements required for such relief or provide legal authority specifically addressing that relief. Any such relief would therefore not be warranted. The Court otherwise, and as set forth below, finds Petitioner properly released on conditions of supervision consistent with those in place at the time of his re-detention.

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS the habeas petition, Dkt. 1, and ORDERS that Petitioner be RELEASED from immigration detention within **twenty-four (24) hours** on conditions of supervision consistent with those in place at the time of his re-detention. Respondents shall file a certification with the Court within **forty-eight (48) hours** that Petitioner has been released.

Dated this 2nd day of July, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING HABEAS PETITION - 10